| | |
|---|---|
| **JONATHAN PENLEY,** ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | **CASE NO.:** _____ |
| **GREENE COUNTY, TENNESSEE** ) | |
| **GREENE COUNTY SHERIFF** ) | **JURY TRIAL DEMANDED** |
| **WESLEY HOLT, in his Individual** ) | |
| **and Official Capacity,** ) | |
| **SOUTHERN HEALTH PARTNERS, Inc.** ) | |
| **KENNETH MATHEWS, M.D., in his** ) | |
| **Individual and Official Capacity,** ) | |
| **SHERRY COBBLE, in her Individual** ) | |
| **and Official Capacity,** ) | |
| **MARILYN MANCHA, in her Individual** ) | |
| **and Official Capacity,** ) | |
| **KOURTNEY CANNON, in her** ) | |
| **Individual and Official Capacity,** ) | |
| **STEPHANIE BITNER, in her Individual** ) | |
| **and Official Capacity, and** ) | |
| **UNKNOWN JAIL OFFICERS.** ) | |
| *Defendants.* ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff, Jonathan Penley, by and through his undersigned attorneys and files this Complaint for damages bringing claims under 42 U.S.C. §§ 1983, 1988, the Constitution of the United States, and gross negligence under Tennessee common law.

## PARTIES

**PLAINTIFF**

1. At all times material hereto, Plaintiff was an inmate at the Greene County Detention Center / Jail, being housed as a pre-trial detainee. Plaintiff is a resident of Greene County. Plaintiff suffered grievous injuries while in custody at the Jail and was denied much-needed medical care.

# DEFENDANTS

2. At all times material hereto, Greene County was a political governmental entity in Tennessee and the owner of the Greene County Jail located at 120 East Depot Street, Greeneville, Tennessee. The injury to the Plaintiff complained of occurred at the Greene County Jail. Greene County is legally responsible for its own acts and failures to act, and at all times material hereto, Greene County acted under color of law.

3. Defendant Greene County is civilly liable for any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the Sheriff acting under color of law. *See* T.C.A. § 8-8-302. Under this provision, "deputy" includes a jailer appointed by the Sheriff pursuant to T.C.A. § 41-4-101 and T.C.A. § 8-8-301. Greene County is required to provide to the County Jail sufficient medical personnel as needed to provide timely and appropriate medical services to the persons confined who require such services at the sole expense of the County. T.C.A. § 41-4-115. The County also had a constitutional duty to provide timely and adequate medical care and treatment to inmates suffering from known serious medical conditions. The County is legally liable for the non-negligent acts or failures to act of Greene County deputies / Jailers under T.C.A. § 8-8-302, including instances of *gross* negligence. The County has waived its immunity pursuant to T.C.A. § 8-8-302 and § 29-20-205.

4. On information and belief, to discharge its statutory and constitutional obligations regarding medical care, Greene County contracted with a third-party medical provider, Southern Health Partners, Inc. Medical services were provided by nursing staff and a supervising physician. Southern Health Partners is a Tennessee corporation, formed in Delaware and doing business in Greene County, with its principal office in 2030 Hamilton Place Blvd, Suite 140, Chattanooga, TN 37421. SHP, Inc. was performing traditional governmental services constitutionally required to be

performed by Greene County, making it liable under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under color of law.

5. At all times material hereto, Defendant Wesley Holt was the duly elected Sheriff of Greene County who was statutorily responsible for the day-to-day operation of the Greene County Jail; for the hiring, firing, training and supervision of deputies to man the Jail; and for the safety of persons housed therein against their will. T.C.A. § 41-4-101. At all times material hereto, Sheriff Holt acted under color of law. He is charged with keeping inmates personally, or by the use of deputies or jailers until the inmate is lawfully discharged. T.C.A. §§ 8-8-201(a)(3), 41-4-101. Sherriff Holt is civilly responsible to the Plaintiff for the acts and failures to act of his Jailers. In addition, Sheriff Holt is civilly liable for the actions of his Jailers/officers performing the tasks and duties that Holt was statutorily responsible for performing. *See* T.C.A. § 41-4-101.

6. At all times material hereto, Defendant Kenneth Mathews, M.D., was the Medical Director / physician responsible for overseeing medical care of all inmates at the Greene County Jail. Dr. Mathews is alleged to have unreasonably delayed in evaluating, treating, and/or referring Plaintiff for emergent care despite his severe pain and other serious medical symptoms such as paralysis. On information and belief, Dr. Mathews was an employee / contractor of Defendant Southern Health Partners, Inc., acting pursuant to SHP's contract with Greene County.

7. At all times material hereto, Defendant Sherry Cobble, RN was the Director of Nursing at the Greene County Jail and Defendants Mancha, Cannon, and Bitner were Licensed Practical Nurses (LPNs) responsible for day-to-day medical care of inmates at the County Jail. The Nurse Defendants were supervised by Dr. Mathews. The Nurse Defendants knew of Plaintiff's pain and increasingly serious symptoms such as limb paralysis and failed to report or delayed in reporting these symptoms, or otherwise failed to ensure Plaintiff was referred for emergent care.

The Nurse Defendants are employed either directly by the County or by Southern Health Partners; discovery will reveal the exact relationship(s) between the parties.

8. The Unknown Defendant Jail Officers, whose identities are unknown to Plaintiff but obtainable through discovery and are known to the Sherriff and the County, consist of officers whom knowingly assigned Plaintiff to a top bunk after he requested a bottom bunk due to medical issues, and those Jail Officers who knew of Plaintiff's medical complaints but failed to act.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over these claims brought under the Constitution of the United States pursuant to 42 U.S.C § 1983 by virtue of 28 U.S.C. §§ 1331 and 1343, and pendent claims under Tennessee common law pursuant to 28 U.S.C. § 1367.

10. Venue lies in the United States District Court for the Eastern District of Tennessee, Northeastern Division, at Greeneville, because the constitutional violations and injury to Plaintiff occurred in Greene County, Tennessee. 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

11. Plaintiff Jonathan Penley is a resident of Greene County, Tennessee. Sometime in mid-July of 2019, the Plaintiff began to feel ill—experiencing frequent bouts of dizziness/vertigo, light headedness, and disorientation.

12. On July 15, 2019, Plaintiff was arrested by a Greene County Sheriff's deputy after he was reported to be "acting erratic" on someone else's lawn. Mr. Penley does not now recall why or how he came to be on someone else's property. Penley was later diagnosed as a Type I diabetic; on information and belief, he may have had a hypoglycemic episode. He was arrested for public intoxication, possession of drug paraphernalia, and violation of probation.

13. Plaintiff was transported to the Greene County Jail. During booking, Plaintiff asked that he not be assigned a "top bunk" in a cell, citing his frequent dizzy spells. Despite this report, Plaintiff was not evaluated by a medical professional or assigned to a top bunk.

14. On or about July 20, 2019, while sleeping in the middle of the night, Plaintiff fell from his bunk head-first onto the concrete floor. He suffered severe injuries to his head, shoulders, and neck, with associated pain. In the days that followed, Greene County Jail medical professionals used a portable x-ray machine to evaluate Plaintiff for injuries. Plaintiff was told he had "arthritis" and that there were no visible injuries stemming from the fall.

15. For the next few weeks, Plaintiff reported to Jail officials and medical professionals that he was continuing to experience severe head and neck pain since the fall. At times, Plaintiff was provided with 800 mg of ibuprofen—but even this treatment was intermittent. Many days, the Plaintiff was not given anything for this pain. He was also not evaluated by a physician or other qualified medical professional for lasting injuries or referred for outside treatment.

16. Plaintiff then lost the use of his arms. He reported this to Jail medical professionals but was ignored. He was not seen by a physician or taken to the hospital for emergent treatment. Because of this new disability, Plaintiff required assistance for daily activities. This fell on other inmates with whom Plaintiff was friendly. For example, Plaintiff's fellow inmates would write out medical requests for him because he could no longer use his hands. Another inmate would wrap his arms around Plaintiff's chest and carry him to the cell's commode so that Plaintiff could use the restroom. Seeing this, Jail officials and medical professionals still did nothing.

17. At some point, believed to be around mid-August 2019, Plaintiff was diagnosed as a Type I diabetic. Despite this diagnosis, his blood sugars were not regularly checked nor was he given insulin on a consistent schedule.

18. In early September 2019, Plaintiff's legs became "wobbly" and weak. He reported this new symptom to Jail officials and medical professionals, and yet **still** he was not referred for emergent or outside evaluation or care. Plaintiff ultimately lost all function in his legs, becoming a quadriplegic. Finally, he was carried out of the Jail, placed into the back of a cruiser and taken to a hospital in Greeneville, Tennessee. In total, approximately 2.5 months went by without the Plaintiff being referred for emergent care, despite increasingly serious and obvious symptoms such as paralysis and excruciating pain.

19. At the hospital, an MRI was conducted, and Plaintiff was transported to Johnson City Medical Center for emergent surgery on his neck and spine. The surgeon who performed this surgery told Plaintiff's family that the fall from the bunk bed had caused a traumatic injury to his cervical spine (at C4 through C7), and that the delay in medical treatment allowed an infection to take hold—causing further damage to his vertebrate and the resulting paralysis.

20. Plaintiff spent months in the hospital, at times on the brink of death, while medical professionals addressed the infection attacking his spine. He was seen by infectious disease and bone specialists. It was later discovered that the infection had spread to his brain, causing lesions (pus and inflamed tissue) in his brain, resulting in deficits to his memory and other faculties.

21. In November 2019, still a quadriplegic and needing more care than his family could provide, Plaintiff was transferred to a nursing home. As of the date of this filing, the Plaintiff is still in a nursing home, although he hopes to relocate to his father's home in late July. He will need round-the-clock care and a motorized wheelchair to get around. Although he has regained some minimal use of his arms, Plaintiff has extremely limited use of his hands and no function in his legs. He only recently learned how to feed himself. Plaintiff is 39 years old and has two children.

22. The Plaintiff suffered fear and pain, loss of capacity for the enjoyment of life, and his grievous injuries and paralysis are continuing and, very likely, permanent. Plaintiff has incurred exorbitant medical expenses and is no longer able to be gainfully employed. Plaintiff is entitled to reasonable attorneys' fees and costs.

23. **The County's Policies / Deliberate Indifference**. On information and belief, the Greene County Jail officials and medical professionals responsible for the Plaintiff's care acted with deliberate indifference to his constitutional rights and in accordance with an unofficial policy and/or custom of providing delayed or inadequate medical care to inmates at the Greene County Jail. The most obvious evidence of such a policy or custom is Jail officials' willful actions in ignoring—for *two and a half months*—the Plaintiff's increasingly serious symptoms such as pain and paralysis. In addition, on information and belief, Greene County has been the subject of numerous complaints and lawsuits alleging delayed and/or denial of medical care. For example:

- *Shoemaker v. Greene County, et al.*, No: 2:07-cv-124 (E.D. Tenn.) (alleging that Greene County Jail nursing staff refused to refer plaintiff for dental care following eight months of medical requests complaining of "busted," infected, and painful teeth).
- *Norton v. Greene County, et al.*, No: 2:11-cv-157 (E.D. Tenn.) (alleging that Greene County Jail medical personnel failed to provide prenatal care and later failed to adequately respond when plaintiff suffered a miscarriage).

24. On information and belief, Defendant Cobble was the head nurse and Defendant Mathews was the Medical Director / physician at the Jail in charge of Plaintiff's care. Although, given his brain injuries, the Plaintiff's memory of the exact events are "fuzzy," and Greene County has denied a lawful request for Jail medical records, on information and belief, these Defendants and the other Nurse Defendants were aware of his declining health and serious symptoms such as paralysis, yet they failed to further evaluate him or refer him for emergent care.

25. On information and belief, Sheriff Holt and Greene County enacted certain policies and procedures which prioritized cost-cutting measures over quality and breadth of inmate medical care. Most notably, Greene County contracted with Southern Health Partners, Inc., a Chattanooga-based, for-profit jail healthcare company with a policy, custom, and practice of hiring "absentee" or remote-based Medical Directors who are often employed as the Medical Director of numerous jails, all the while maintaining separate / busy private practices. SHP's employee / contractor, Dr. Kenneth Mathews was engaged to serve as the "Medical Director" at the Greene County Jail, despite the County knowing that Dr. Mathews would be a largely-absentee provider in light of his obligations as the Medical Director at other jails throughout Tennessee. On information and belief, Dr. Mathews only infrequently visited the Jail to evaluate his patients. Greene County knew Dr. Mathews could not oversee the provision of medical care with the attention required to secure the inmates rights and prevent unreasonable delays in evaluating and treating these inmates.

26. On information and belief, Dr. Kenneth Mathews provided medical services at the Jail pursuant to SHP's contract with the County. Dr. Mathews has been named a Defendant (often alongside Southern Health Partners) in many lawsuits alleging constitutionally inadequate care at the other corrections facilities where Dr. Mathews provides services, for example:

- *Duffer v. Sumner County, et al.* No. 3:15-cv-0850 (M.D. Tenn.) (alleging plaintiff was seen by Dr. Mathews over a month after he first reported he was vomiting blood; the plaintiff was later hospitalized and diagnosed with acute myeloid leukemia and renal failure).

- *Smith v. Southern Health Partners, et al.*, No. 3:18-cv-0462 (M.D. Tenn.) (alleging the plaintiff's complaints of pain stemming from a dislocated shoulder were ignored by Dr. Mathews and nursing staff for eleven months).

- *Salada v. Putnam County*, No. 2:16-cv-00032 (M.D. Tenn.) (alleging denial of medical care for plaintiff's diabetes, chest pains, vision problems, and genital warts).

- *Helms v. Grainger County, et al.*, No. 3:17-cv-00037 (E.D. Tenn.) (alleging Dr. Mathews and other jail medical professionals denied prenatal care and ignored her complaints and failed to refer her for emergent care when she suffered a miscarriage at five months).

- *Hughes v. SHP, et. al.*, No. 2:14-CV-140 (E.D. Tenn.) (alleging Dr. Mathews reviewed X-rays showing metal fragments in plaintiff's right leg and knee but informed him that the County "would never approve any surgery or costly medical help").

On information and belief, Sheriff Holt and Greene County were aware of the many complaints against Dr. Mathews / SHP and yet continued to retain Mathews as the Jail's Medical Director, in deliberate indifference to the rights of inmates such as Plaintiff.

## CAUSES OF ACTION

### COUNT I
### DENIAL OF MEDICAL CARE — 42 U.S.C. § 1983
*Against the Nurse Defendants, Dr. Mathews and the Unknown Jail Officials*

27. Plaintiff re-alleges paragraphs 1-26, inclusive.

28. As a pre-trial detainee, Plaintiff had a constitutional right under the Fourteenth Amendment of the U.S. Constitution to be provided access to adequate medical care for injuries and medical conditions that were obvious and serious enough to require the attention of medical personnel. This right was well-established at the time and was further known to these Defendants.

29. Plaintiff asked the Unknown Jail Officials at booking that he be assigned a bottom bunk because he had been suffering from disorientation and frequent dizzy spells. Despite this and the obvious risk of serious injury posed, Plaintiff was assigned to a top bunk. As a result, he fell onto the concrete floor and suffered grievous injuries to his neck and head.

30. As detailed above, over the next few weeks and months, Plaintiff presented with increasingly serious symptoms — first, debilitating head, neck, and shoulder pain, and eventually prolonged limb paralysis. The Nurse Defendants and Dr. Mathews largely ignored the Plaintiff's deteriorating medical condition, failed to properly evaluate / treat his pain and other symptoms, and unreasonably delayed in referring him for emergent care. On information and belief, the Nurse Defendants and Dr. Mathews also failed to properly monitor Plaintiff's blood sugar and administer

insulin. As evidenced by the months-long delay in referring him for emergent care, Defendants acted in deliberate indifference to the substantial risk of serious and permanent injuries to Plaintiff.

31. These constitutional violations were the direct and proximate cause of Plaintiff's injuries and damages. Plaintiff has suffered serious, grievous bodily injuries including trauma to his cervical spine, an infection that was allowed to spread to his spine and brain, resulting in full or partial paralysis of Plaintiff's arms and legs. Plaintiff cannot walk, suffered mental deficits such as loss of memory, has extremely limited use of his arms and hands, and requires round-the-clock care. Plaintiff also suffered fear, pain, the loss of the capacity for the enjoyment of life and incurred substantial medical expenses.

**WHEREFORE** Plaintiff demands judgment against Defendants Dr. Mathews, Cobble, Mancha, Cannon, Bitner and the Unknown Officers, in their individual and their official capacities, in the amount of Ten Million Dollars ($10,000,000), costs of this action, pre-judgment and post-judgment interest, and reasonable attorney's fees.

**COUNT II**
**UNLAWFUL POLICY/CUSTOM — § 1983 *MONELL* LIABILITY**
*Against Sheriff Holt, Greene County and Southern Health Partners, Inc.*

32. Plaintiff re-alleges paragraphs 1-31, inclusive

33. As a pre-trial detainee, Plaintiff had a constitutional right under the Fourteenth Amendment of the U.S. Constitution to be provided access to adequate medical care for injuries and medical conditions that were obvious and serious enough to require the attention of medical personnel. This right was well-established at the time and was further known to these Defendants.

34. Greene County, through Sheriff Holt and other County officials, was on notice that Dr. Mathews and/or SHP provided constitutionally inadequate medical care to inmates and yet continued to retain Dr. Mathews as the Jail's Medical Director. The County, through Sheriff Holt

- 10 -
Case 2:20-cv-00156-TAV-CRW   Document 1   Filed 07/20/20   Page 10 of 13   PageID #: 10

and other County officials, employed an unofficial policy and/or custom of prioritizing cost-cutting measures at the expense of quality of care. One such policy was that medical professionals at the Greene County Jail were expected to refer inmates for evaluation and treatment at outside facilities, or for emergent care, **only as an absolute last resort** rather than a necessary step when an inmate presented with serious medical needs that the Jail was ill-equipped to address. As a result, inmates like Plaintiff received specialized / emergent care when it was too late—*i.e.*, when their condition had deteriorated to the point that grievous and lasting injuries became a foregone conclusion.

35. Southern Health Partners was on notice that Dr. Mathews provided constitutionally inadequate care, especially given SHP's clear policy of stretching medical providers "too thin" by engaging them to provide services at as many as a dozen correctional facilities. Nonetheless, SHP continued to promote Dr. Mathew's services to municipalities such as Greene County to provide medical services to inmates in the County's custody.

36. Defendants knew that these policies and/or practices posed a substantial risk of serious injuries to inmates at the Greene County Jail, yet they failed to act to prevent these abuses and protect the rights of the inmates in their care. Accordingly, Defendants acted with deliberate indifference to the Plaintiff's constitutional rights.

**WHEREFORE** Plaintiff demands judgment against Defendants Holt, Greene County and Southern Health Partners, Inc., in the amount of Ten Million Dollars ($10,000,000), costs of this action, pre-judgment and post-judgment interest, and reasonable attorney's fees.

### COUNT III
### GROSS NEGLIGENCE — TENNESEE COMMON LAW
*Against Sheriff Holt and Greene County, Tennessee*

37. Plaintiff re-alleges paragraphs 1-36, inclusive.

38. As alleged above, Sheriff Holt and Greene County had the statutory, constitutional, and common law duty to provide adequate and timely medical care to the inmates in the County's custody. These Defendants breached that duty by enacting policies that created a substantial and unreasonable risk that Jail inmates would be denied medical care—to wit, employing a largely absentee "Medical Director" who was unable to devote the time and effort at the Jail to ensure the adequate supervision of Jail nursing staff and monitor inmates' serious medical conditions, and a policy encouraging Jail medical staff to refer inmates for specialized and/or emergent care only as an absolute last resort rather than a necessary step when an inmate presents with serious issues.

39. These Defendants acted with a conscious or reckless disregard to the foreseeable and substantial risk that inmates at the Greene County Jail, like Plaintiff, would suffer grievous injuries from the denial of medical care.

40. These *de facto* policies and/or customs implemented at the Greene County Jail were directly responsible for the deterioration of the Plaintiff's medical condition and resulting injuries, including (likely-permanent) paralysis of his arms and legs.

**WHEREFORE** Plaintiff demands Judgment against Defendants Holt and Greene County in the amount of five million dollars and no cents ($5,000,000), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys' fees.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury pursuant to his Constitutional right to a trial by jury.

**RESPECTFULLY SUBMITTED**, this the **20th** day of **July**, **2020**.

**[Signature of Counsel Appears on Page 13.]**

**BOWLIN │ STEPHENS, PLLC**

By: _____*for The Firm*
Troy L. Bowlin, II No. 025893
*Attorney for Plaintiff*
First Tennessee Plaza
800 South Gay St. Suite 2131
Knoxville, Tennessee 37929
Telephone: 865.245.2011
troy@bowlinstephens.com
www.bowlinstephens.com